927 P.2d 772

**Richard D. CLIFTON, Plaintiff,**

**v.**

**Fran DECILLIS, Clerk of the Santa Cruz Board of Supervisors of Santa Cruz County and Director of Election; Roberto (Bob) Damon, Supervisor of Santa Cruz County; Ronald Morris, Supervisor of Santa Cruz County, Suzanne Sainz, Recorder of Santa Cruz County; and County of Santa Cruz, a body politic, Defendants,**

**and**

**Susan M. Soto–Fleischer, Real Party in Interest.**

**No. CV–96–0405–AP.**

Supreme Court of Arizona, En Banc.

Dec. 3, 1996.

Donald E. Gabriel, Nogales, for Plaintiff.

Gabroy Rollman & Bossé, P.C. by Ronald M. Lehman, Tucson, for Defendants.

William I. Rothstein, Nogales, for Real Party in Interest.

**OPINION**

FELDMAN, Chief Justice.

R.D. Clifton, a Santa Cruz County voter, filed a complaint to enjoin Santa Cruz County election officials from placing Susan Soto–Fleischer's name on the general election ballot for the Board of Supervisors, District II. After an evidentiary hearing, the superior court found Soto–Fleischer's petitions did not

meet the statutory requirements for nomination other than by primary election. Soto–Fleischer (Appellant) appealed pursuant to A.R.S. § 16–351(A), which permits direct appeal to this court.

After hearing oral argument, we issued an order requiring Appellant's name to appear on the ballot and stating that an opinion would follow.

## FACTS

Appellant, a registered Independent, wished to be a candidate for the Santa Cruz County Board of Supervisors, District II. Because she is not a member of a political party, Appellant was required to file a "nominating paper" stating her intention to run and was also required to obtain "nominating petitions" (petitions) signed by at least three percent of the voters in her district who were not members of a political party qualified to be represented by candidates at a primary election. See A.R.S. §§ 16–311, 16–341. Section 16–341(D) requires the petition be in substantially the following form:

> The undersigned, qualified electors of the _____ precinct of _____ county, state of Arizona, do hereby nominate _____, who resides at _____ in the county of _____, as a candidate for the office of _____ at the general (or special as the case may be) election to be held on the _____ day of _____, 19__.
>
> I hereby declare that I have not signed the nomination petitions of any candidate for the office to be voted for at this primary election, I am not a member of a political party that is qualified to be represented by an official party ballot at the next ensuing primary election and accorded representation on the general election ballot and *I do hereby select the following designation under which name the said candidate shall be placed on the official ballot (here insert such designation not exceeding three words in length as the signers may select).*

A.R.S. § 16–341(D) (emphasis added).

Appellant used this form on her three petitions but failed to fill in the blank that required the equivalent of a party designation.

However, Appellant testified at the evidentiary hearing in the trial court that to get the required signatures, she obtained a list of registered Independents in her district, went to their homes, asked to speak to the voter, and told the voter she was running as an Independent before receiving the voter's signature. Appellant was not cross-examined and no evidence other than her testimony was offered. Thus, her testimony was not called into doubt, although a canvass of the signatures shows that four of the nineteen signers were not Independents. However, both parties have stipulated that even without these four signatures Appellant has enough signers to be placed on the ballot.

Several days after the petitions were filed, the Santa Cruz County Director of Elections noticed the designation blanks on the petitions had not been filled in and called this to Appellant's attention. Appellant subsequently filled them in, after the documents were filed.

## THE ISSUE

▇ Has Appellant substantially complied with A.R.S. § 16–341(D) by filing petitions without filling in the blanks for the designation "under which name" her candidacy shall be placed on the ballot? The trial judge ruled against Appellant. We review *de novo* because this is a pure question of law.

## DISCUSSION

The crux of this case is our understanding of the operation of A.R.S. § 16–341(D) and what comprises substantial compliance with the statute. The first question is whether the candidate is required to fill in the blank. The language of the statute requires the signers to fill it in. However, this requirement is internally inconsistent with the prescribed form of the petition because most petitions have space for fifteen signers, each of whom theoretically could insert a different designation. The second question is whether the candidate has substantially complied with the statute when she fails to fill in the blank.

A. Does the statute require the candidate or the signer to choose the designation on the nominating petition?

■ In *State ex rel. Ross v. Nance*, this court held that when interpreting a statute, we must determine the legislative intent behind the statute. 165 Ariz. 286, 288, 798 P.2d 1295, 1297 (1990). To discern the intent the court will examine the policy behind the statute, the evil sought to be remedied, the context, the language, and the historical background of the statute. *Id.* Because the disposition of this case depends on our understanding of substantial compliance with the statutory requirements and the operation of internally inconsistent requirements within the statute, it is appropriate to look at the historical background of the statute.

In territorial Arizona there were no direct primaries; candidates were weeded out by party convention or committee. In 1901, a provision for nomination by petition was enacted, which has evolved into the present-day system of nomination. Section 2320, Ariz. Civ.Code 1901, required of non-party candidates:

A certificate of nomination, containing the name of a candidate for the office to be filled, together with such information as is required to be given in certificates provided for in the case of nominations by convention or committee (except that said certificate shall designate, in not more than three words, instead of the party, the political or other name which the signers shall elect), shall be signed by voters....

This mode of nomination was retained in 1909, when primary elections were first mandated in the territory. 1909 Ariz. Sess. Laws, Ch. 24, § 2(A)(2) ("Hereafter all candidates for elective offices shall be nominated ... by independent nomination papers signed and filed as provided by existing statutes."). While the issue of primary voting for the first state elections was particularly important at the Constitutional Convention of 1910, nomination by petition was recognized under the Enabling Act. Records of the Arizona Constitutional Convention of 1910 (Records), Oct. 31, 1910 at 131, Nov. 30, 1910 at 780. Therefore, although Art. VII, § 10 of the new constitution instructed the legislature to enact a primary election law, the convention omitted a second proposal requiring the legislature to "make provision for the nomination of candidates for elective public offices by the petition of electors, where such candidates are not chosen by organized political parties." Proposition No. 21, Records at 1098. A review of the journals of the first several sessions of the legislature and the session laws reveals no particular debate on the adoption of the procedures for nominations into the Revised Statutes of 1913. However, the form of the provision for nomination by petition did change. Ariz. Civ. Code 1913, § 3039.

This change appears to be one made merely for clarification, and the amended language remains the same today. In 1901 the statute required nomination petitions to differ from party petitions only in that the nomination "*certificate shall designate,* in not more than three words, instead of the party, the political or other name which the signers shall elect." Ariz. Civ.Code 1901, § 2320 (emphasis added). Since 1913, the petition has been required to say "I [the signer] *do hereby select* the following designation under which name the said candidate shall be placed on the official ballot." Ariz. Civ.Code 1913, § 3039; A.R.S. § 16–341(D)(emphasis added). Because there does not appear to be any mandate from the legislature to read the 1913 provision as a change to the 1901 provision, we will attempt to read them together. *See Washington v. Maricopa County,* 152 F.2d 556 (1945), *cert. denied,* 327 U.S. 799, 66 S.Ct. 900, 90 L.Ed. 1024 (1946) (when a word, phrase, or paragraph in the 1913 code is omitted from the 1928 code, intent is presumed to be to simplify language without changing meaning, rather than to make material alteration in the substance of the law itself).

The murkiness of the operation of the 1901 statute makes it nearly impossible to determine the legislature's intent regarding who was to fill in the designation for a candidate. Plausible arguments may be made that either those who filed the certificate or the signers of the petition were to fill in the designation.

B. Does a candidate's failure to fill in the designation invalidate the petition or is such omission *de minimis?*

The nominating petitions were designed to "in some measure [weed] out the cranks, the publicity seekers, the frivolous candidates who have no intention of going through with the campaign." *Adams v. Bolin,* 77 Ariz. 316, 320, 271 P.2d 472, 475 (1954). "The problem is to strike a balance, to make the requirements stringent enough to discourage those who do not for an instant merit the voter's consideration, yet not keep out those who are serious in their efforts and have a reasonable number of supporters." *Id.*

We recognize that politics have changed since the days of the Progressive Party and Bull Moose Republicans. The 1901 nomination process was designed for candidates of parties that had not run in previous elections. Ariz. Civ.Code 1901, § 2317. This function has since been usurped by A.R.S. §§ 16–802 and 16–804, which qualify political parties. Now the general ballot, non-primary nomination procedure is principally used by people who do not wish to attach a party affiliation to their campaign or wish to evade primary contests by avoiding party affiliation. While some may accept the connotations of "Independent" for their candidacy, it is also perfectly acceptable to avoid any associations and choose something nonexistent or nonsensical as a ballot designation.

Pulling a designation out of the blue is not forbidden by prior case law. In *Board of Supervisors v. Harrington,* 85 Ariz. 163, 333 P.2d 971 (1958), the majority held that a nominated candidate could not list himself as a Republican when no Republican had run in the party primary for the position. However, neither the majority nor the dissent addressed the question of what designation should be used if the candidate was not a member of an established party. In the same year, the court considered whether a candidate, registered as a Republican, could be nominated under the title of Clean Government Party. *Cavender v. Board of Supervisors,* 85 Ariz. 156, 333 P.2d 967 (1958). Again, the issue was who was eligible to use the petition system, not how non-party candidates designated themselves. The court held that a candidate may create a previously unheard of designation for his candidacy. The court, however, has never decided whether the candidate or those who sign the nominating petitions must designate a party.

It has been suggested the requirement for a designation is to prevent misleading the voters and thus is not *de minimis.* However, Republicans, Democrats, Libertarians, and various other qualified party politicians cannot use the nominating procedure other than by primary election. *See* A.R.S. § 16–341(A) and (B). Because the petition signer must sign a statement that denies membership in these parties,[1] using a blank to hide such affiliation would be a misrepresentation and a clear violation of the statute. A blank space when one considers oneself an Independent (a designation in Arizona that means no party rather than a specific party) is no more misleading to a voter than a candidate who chooses to designate himself as a candidate from the Greens, the Clean Government Party, or Space Aliens United. Furthermore, such non-party candidates appear on the general election ballot in the column for "Other Candidates," along with the designation they chose on their *certificate* of nomination. A.R.S. § 16–502(E).[2] Thus, the party designation on the nominating petition is essentially irrelevant for the general election.

The party designation on the nominating petitions is simply for the benefit of the people signing the petitions. Given the designation can be anything the candidate dreams up, as long as it is not the same as a party that holds primary elections, we con-

---

1. "I am not a member of a political party that is qualified to be represented by an official party ballot at the next ensuing primary election...." A.R.S. § 16–341(D).

2. A.R.S. § 16–502(E) states:
   The names of all candidates nominated under the provisions of § 16–341 shall be placed in a single column at the right of the party columns and shall bear the heading in bold-faced type: "Other candidates," and immediately under such heading the words: "Vote separately for each office." Immediately above the name of each candidate, in parenthesis, shall be printed the designation prescribed in the candidate's certificate of nomination.

clude that filling in the required designation blank is not essential for candidacy. Further, the statute does not mandate perfection but only that candidates substantially comply with its requirements. We find, therefore, that the absence of a designation on the petitions was *de minimis*. Although it was certainly unwise for Appellant, as well as the county elections commissioner, to fill in the designation space after her petitions had been signed and filed, an attempt at *post hoc* designation was not fatal to her candidacy.

### CONCLUSION

Where the statute allows a measure of inconsistency by only requiring substantial compliance, we reaffirm the statement made in *Territory v. Board of Supervisors,* 2 Ariz. 248, 253, 12 P. 730, 732 (1887), that "[i]t is the object of elections to ascertain a free expression of the will of the voters, and no mere irregularity can be considered, unless it be shown that the result has been affected by such irregularity." Given our inability to determine legislative intent on the issue of who should fill in the designation, we conclude that the omission in the present case was *de minimis* and that Appellant, as required, substantially complied with A.R.S. § 16–341. The judgment of the trial court is reversed.

ZLAKET, V.C.J., and MOELLER, MARTONE and JONES, JJ., concur.