SUPREME COURT OF ARIZONA

| | |
|---|---|
| BARBARA ANN LUBIN, a registered voter, | ) Arizona Supreme Court<br>) No. CV-06-0321-AP/EL |
| Plaintiff/Appellee, | ) Maricopa County<br>) Superior Court |
| v. | ) No. CV2006-012777 |
| DOUGLAS E. THOMAS, an individual, | ) |
| Defendant/Appellant, | ) O P I N I O N |
| SANDRA DOWLING, in her official capacity as Superintendent of Schools of Maricopa County, Arizona; HELEN PURCELL, in her official capacity as Recorder of Maricopa County, Arizona; KAREN OSBORNE, in her official capacity as Director of Elections of Maricopa County, Arizona; and DON STAPLEY, FULTON BROCK, ANDREW KUNASEK, MAX WILSON and MARY ROSE WILCOX, in their official capacities as Members of the Board of Supervisors of Maricopa County, Arizona, | ) |
| Defendants/Appellees. | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Ruth Harris Hilliard, Judge

**AFFIRMED**
_____

SHUGHART THOMSON & KILROY PC                                    Phoenix
     By   Thomas K. Irvine
          Andrew S. Jacob
Attorneys for Barbara Ann Lubin

Douglas E. Thomas                                              Phoenix
In Propria Persona

ANDREW P. THOMAS, MARICOPA COUNTY ATTORNEY                      Phoenix
      By   M. Colleen Connor
Attorneys for Sandra Dowling, Helen Purcell, Karen Osborne, Don
Stapley, Fulton Brock, Andrew Kunasek, Max Wilson, and Mary Rose
Wilcox

_____

**B A L E S**, Justice

¶1      This case concerns a challenge to the nomination petitions of Douglas Thomas, a candidate for the governing board of the Phoenix Union High School District, Ward 3.  Thomas appealed from a superior court judgment holding that he lacked sufficient valid petition signatures to be placed on the November 7, 2006 ballot.  The key issue is whether the County Recorder may invalidate signatures for reasons other than those specifically alleged by the challenger.  On September 15, 2006, this Court issued an order affirming the superior court's judgment.  This written opinion explains the basis for our decision.

¶2      We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 16-351(A) (Supp. 2005).

## I.   Background

¶3      To be placed on the ballot, a candidate for a school district governing board must submit nomination petitions signed by a sufficient number of qualified electors.  *Id.* § 16-322(A) (11).   The number of required signatures generally is a

2

specified percentage of the district's total registered voters, but not more than 400. *Id*.

¶4      Thomas needed 400 signatures to appear on the November 7, 2006 ballot; he filed 481. Pursuant to A.R.S. § 16-351(A), Barbara Lubin filed a lawsuit challenging 160 of the signatures. As required by the statute, her complaint specified "the petition number, line number and basis for the challenge for each signature being challenged." *Id*.

¶5      When an elector challenges signatures on a candidate's nomination petitions, the challenged signatures must be verified. *Id*. The County Recorder performs this task as the public official charged with maintaining the voting register. *See id.* §§ 16-161 to -162 (1996). The verification procedure resembles that used in the context of a challenge to ballot measure petitions, in which the County Recorder must "determine which signatures of individuals . . . shall be disqualified." *Id*. § 19-121.02(A) (2002).

¶6      After being served with Lubin's challenge, the Maricopa County Recorder reviewed the challenged signatures and found 110 of them invalid. Some of these signatures were invalidated on grounds other than those alleged in the complaint. For example, Lubin challenged the signature found at line one of petition eleven on the grounds that the elector was not registered to vote. The County Recorder, on the other hand,

3

located this elector on the county register but invalidated the signature because the elector was registered to vote in another district. As a result of the 110 disqualified signatures, Thomas was left with only 371 valid signatures, 29 short of the required 400.

¶7        In response, Thomas argued that the County Recorder had exceeded her authority by disqualifying signatures for reasons other than those alleged in Lubin's challenge. The superior court rejected this argument, found that Thomas lacked sufficient valid signatures, and enjoined his name from appearing on the November 7, 2006 ballot. The superior court announced its decision in a minute entry on September 1, 2006, and entered judgment on September 4, 2006.

¶8        Thomas filed a notice of appeal on September 6, 2006, within the five-day limit provided in A.R.S. § 16-351(A). He took no further action, however, to prosecute his appeal. On Thursday, September 14, 2006, having received no briefing from either party, the Court sua sponte conducted a telephonic hearing to inquire as to the status of the case. Because the deadline for the printing of absentee ballots was Sunday, September 17, 2006, the Court at that point effectively had only one business day to consider and decide this matter.

4

## II.  Laches

¶9      Initially, we note that this appeal might have been dismissed based on the equitable doctrine of laches.  The Court has often applied this doctrine to actions challenging the legal sufficiency of initiative measures.  *Harris v. Purcell*, 193 Ariz. 409, 412 ¶ 15, 973 P.2d 1166, 1169 (1998); *Mathieu v. Mahoney*, 174 Ariz. 456, 458-59, 851 P.2d 81, 83-84 (1993); *Kromko v. Superior Court*, 168 Ariz. 51, 57, 811 P.2d 12, 18 (1991).  The laches doctrine also applies to actions challenging candidate nomination petitions.

¶10     In the context of election matters, the laches doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable delay prejudices the opposing party or the administration of justice.  *Harris*, 193 Ariz. at 412 ¶¶ 16-17, 973 P.2d at 1169 (citing *Mathieu*, 174 Ariz. at 459, 851 P.2d at 84).  Time is of particular importance because all disputes must be resolved before the printing of absentee ballots.  *Id.* at 412 ¶ 15, 973 P.2d at 1169.  Unreasonable delay can therefore prejudice the administration of justice by compelling the court to "steamroll through . . . delicate legal issues in order to meet" the ballot printing deadlines.  *Mathieu*, 174 Ariz. at 459, 851 P.2d at 84 (quoting *State ex rel. Fidanque v. Paulus*, 688 P.2d 1303, 1308 (Or. 1984)).  For that reason, merely complying with the time limits in A.R.S. § 16-351(A) for filing a notice

5

of appeal may be insufficient if the appellant does not also promptly prosecute the appeal. *Cf. Klebba v. Carpenter*, 213 Ariz. 91, ___ ¶ 10, 139 P.3d 609, 611 (2006)("The statute . . . places the burden to act with celerity not only on the superior court, but also on the party challenging nomination petitions.").

¶11    Here, Thomas's failure to diligently pursue his appeal left this Court a very short time in which to review and decide the matter. Given the relative simplicity of the issues before us, and because laches was not raised as a defense, we have resolved this case on its merits. We caution, however, that a party's failure to diligently prosecute an election appeal may in future cases result in a dismissal for laches.

### III. Disqualifying Signatures

¶12    On the merits, Thomas's appeal turns on A.R.S. § 16-351(A). This statute requires an elector challenging a candidate's nomination petitions to "specify in the action the petition number, line number and basis for the challenge for each signature being challenged." Failure to do so will result in the dismissal of the action. *Id*. Thomas does not contend that Lubin's challenge failed to specify a basis for challenging particular signatures. Thomas instead argues that once Lubin had alleged certain grounds for questioning a signature, § 16-

6

351(A) prevented the County Recorder from relying on a different basis to invalidate the signature.

¶13 "We review issues of statutory interpretation de novo." *Moreno v. Jones*, 213 Ariz. 94, ___ ¶ 23, 139 P.3d 612, 616 (2006).

¶14 By its terms, A.R.S. § 16-351(A) does not indicate whether the County Recorder may disqualify signatures on bases other than those specifically alleged in the complaint. Accordingly, we look outside the statute to determine its meaning. "To discern the [legislative] intent the court will examine the policy behind the statute, the evil sought to be remedied, the context, the language, and the historical background of the statute." *Moreno*, 213 Ariz. at ___ ¶ 24, 139 P.3d at 616 (citing *Clifton v. Decillis*, 187 Ariz. 112, 114, 927 P.2d 772, 774 (1996)).

¶15 Candidates are required to obtain nomination petitions to ensure that they have adequate support from eligible voters to warrant being placed on the ballot. *See Adams v. Bolin,* 77 Ariz. 316, 320, 271 P.2d 472, 475 (1954) (stating that the purpose of requiring nomination petitions is to "make the requirements stringent enough to discourage those [candidates] who do not for an instant merit the voter's consideration, yet not keep out those who are serious in their efforts and have a reasonable number of supporters"). If the County Recorder's

7

review of the challenged signatures were limited solely to the reasons stated in the challenging document, this principle would be disserved. It makes little sense to allow an inadequately supported candidate to be placed on the ballot simply because the challenger misidentified in the complaint why certain signatures are invalid.

¶**16** Additionally, the legislative history of A.R.S. § 16-351(A) is instructive on the purposes behind the requirement that a challenger specify the petition number, line number, and basis for each signature challenge. The primary purpose is to "allow the Elections office to more efficiently do preliminary work to deal with candidate challenges, and . . . eliminate the need to go to court in some cases." *Ariz. State Senate Fact Sheet for H.B. 2101,* 44th Leg., 1st Reg. Sess. (Ariz. 1999). Before the amendment to A.R.S. § 16-351(A), signature verification was often difficult for the County Recorder, and the amendment was meant to simplify the process. As the committee minutes indicate:

> Helen Purcell, Recorder, Maricopa County, testified that the Recorders [sic] Office is in support of H.B. 2101. She said this legislation gives her office a better idea of what to look for in the challenge process. It is extremely difficult for her office if it does not know what the challenges are. This legislation will make it easier for the Recorder's Office to locate the information.

*Minutes of House Comm. on Judiciary*, 44th Leg., 1st Reg. Sess. (Ariz. Jan. 27, 1999) ("House Minutes").

¶**17** The pleading requirement of A.R.S. § 16-351(A) also serves to discourage frivolous challenges. As Representative Gerard explained to the Arizona House Judiciary Committee, "a person can challenge a nomination just to cause trouble. This bill requires the challenger to show that some evidence exists for the challenge." House Minutes.

¶**18** Nothing in the legislative history of A.R.S. § 16-351(A) indicates that the legislature intended to limit the County Recorder's review of questioned signatures only to the bases stated in the complaint. If a challenger is able, consistent with A.R.S. § 16-351(A) and the requirements of Rule 11 of the Arizona Rules of Civil Procedure, to allege particular grounds for challenging signatures, the statutory purposes are not served by holding that a signature should be treated as valid merely because the County Recorder has found it invalid for a reason other than that alleged.

¶**19** We therefore hold that the County Recorder, in reviewing challenged nomination petition signatures, may invalidate signatures for legitimate reasons other than those specifically alleged in the challenger's complaint.

## IV.   Conclusion

¶20     For the foregoing reasons, we affirm the judgment of the superior court enjoining the placement of Thomas's name on the ballot for the office of governing board of the Phoenix Union High School District, Ward 3.


_____
W. Scott Bales, Justice


CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice