SUPREME COURT OF ARIZONA
In Division

ROYCE JENKINS,                      )  Arizona Supreme Court
                                    )  No.  CV-08-0208-AP/EL
            Plaintiff/Appellant,    )
                                    )
                                    )  Maricopa County
                 v.                 )  Superior Court
                                    )  No.  CV2008-013774
ALBERT HALE; JAN BREWER, in her     )
official capacity as Arizona        )
Secretary of State; COCONINO        )
BOARD OF SUPERVISORS; NAVAJO        )  **O P I N I O N**
COUNTY BOARD OF SUPERVISORS;        )
APACHE COUNTY BOARD OF              )
SUPERVISORS; MOHAVE COUNTY BOARD    )
OF SUPERVISORS; YAVAPAI COUNTY      )
BOARD OF SUPERVISORS; CANDACE D.    )
OWENS, in her official capacity     )
as Coconino County Recorder;        )
LAURETTE JUSTMAN, in her            )
official capacity as Navajo         )
County Recorder; LENORA Y.          )
JOHNSON, in her official            )
capacity as Apache County           )
Recorder; JOAN McCALL, in her       )
official capacity as Mohave         )
County Recorder; and ANA            )
WAYMAN-TRUJILLO, in her official    )
capacity as Yavapai County          )
Recorder,                           )
                                    )
            Defendants/Appellees.   )
_____ )


          Appeal from the Superior Court in Maricopa County
                   Hon. Joseph B. Heilman, Judge
                           **AFFIRMED**
_____


CANTELME & BROWN, P.L.C.                                   Phoenix
      By   David J. Cantelme
           D. Aaron Brown
           Paul R. Neil
Attorneys for Royce Jenkins

PERKINS, COIE, BROWN, & BAIN, P.A.                          Phoenix
     By   Paul F. Eckstein
          Daniel C. Barr
          Rhonda L. Barnes
          Craig A. Morgan
          James E. Barton, II
Attorneys for Albert Hale

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                     Phoenix
     By   Mary R. O'Grady, Solicitor General
          Tanja K. Shipman, Assistant Attorney General
Attorneys for Janice K. Brewer
_____

**B E R C H**, Vice Chief Justice

¶1      We have been asked to decide whether an elector's signature on a nominating petition is invalid as a matter of law if the elector provides a post office box address in the address portion of the signature line.  We hold that it is not.

## I.  FACTS AND PROCEDURAL HISTORY

¶2      Albert Hale seeks his party's nomination for state senator from Legislative District Two.  To qualify for the primary ballot, Hale needs 522 valid signatures on his nominating petitions.  Hale submitted eighty petition sheets that contained more than 800 signatures from electors in Apache, Coconino, and Navajo Counties.

¶3      Royce Jenkins, a qualified elector, challenged 513 signatures:  321 from Apache County, 159 from Navajo County, and 33 from Coconino County.  Of the challenged signatures, the Apache County Recorder validated 227 signatures and the Navajo County Recorder validated two signatures.  The Coconino County

- 2 -

Recorder found every challenged signature to be invalid. In total, the county recorders rejected 284 signatures. But the recorders differed in their validating methodologies: The Navajo and Coconino County Recorders invalidated signatures that contained only a post office box address; the Apache County Recorder, on the other hand, did not. If the Apache County Recorder could verify that the signer was a registered voter, the signature was approved.

¶4 On June 27, 2008, the superior court conducted a hearing. The trial judge found that Hale's petitions contained 523 valid signatures[1] and granted Hale's motion for judgment as a matter of law. Jenkins appealed to this Court, and by an order dated July 7, 2008, we affirmed. This opinion explains our reasoning.

¶5 We have jurisdiction pursuant to Rule 8.1 of the Arizona Rules of Civil Appellate Procedure and Arizona Revised Statutes ("A.R.S.") section 16-351(A) (2006).

## II. DISCUSSION

¶6 In Arizona, candidates seeking placement on primary election ballots must gather signatures from qualified electors and file them with the appropriate elections official. A.R.S.

---

[1] There is some discrepancy in the record whether Hale submitted 523 or 533 valid signatures. Because it makes no difference to the resolution of this case, we treat the trial court's finding as correct.

§ 16-322(A). These signatures are meant to ensure that candidates have "adequate support from eligible voters to warrant being placed on the ballot." *Lubin v. Thomas*, 213 Ariz. 496, 498, ¶ 15, 144 P.3d 510, 512 (2006).

**¶7** The signatures must be collected on "nomination petitions," A.R.S. § 16-314(B), which must conform to certain enumerated statutory requirements, § 16-315(A). At the center of this controversy is the requirement that the petitions be divided into four columns bearing the following headings:

> signature; printed name; *actual residence address or description of place of residence, city, town or post office;* and date of signing.

§ 16-315(A)(4) (emphasis added). Once signatures have been collected, the petition circulator must "verify that . . . in his belief each signer was a qualified elector who resides at the address given as the signer's residence on the date indicated . . . ." § 16-321(D).

**¶8** Any qualified elector may challenge a candidate's petitions. *See* § 16-351(A) (regarding nomination challenges). The challenger may question the candidate's qualifications for office, § 16-351(B), or may test the validity of the nominating petitions or the signatures on the forms themselves, § 16-351(A)-(B). As a general rule, nominating petitions that are "circulated, signed and filed" are presumptively valid, *Miller v. Bd. of Supervisors of Pinal County*, 175 Ariz. 296, 301, 855

- 4 -

P.2d 1357, 1362 (1993); *Bd. of Supervisors of Maricopa County v. Superior Court*, 103 Ariz. 502, 504, 446 P.2d 231, 233 (1968), and the challenger bears the burden to prove, by clear and convincing evidence, that a signer is not a qualified elector, *see Blaine v. McSpadden*, 111 Ariz. 147, 149, 526 P.2d 390, 392 (1974).

¶9      Whether petition signatures are invalid if signers provide a post office box address implicates two questions. First, what address information did the legislature intend petition signers to provide on the nominating petition?  Second, if the legislature intended signers to provide either a residence address or a description of the residence location, is a signature invalid as a matter of law if the signer provides a post office box address?

¶10     Our primary task in answering these questions is to discern the legislature's intent.  *Clifton v. Decillis*, 187 Ariz. 112, 114, 927 P.2d 772, 774 (1996).  The statute's text is the best evidence of that intent, but we "will examine the policy behind the statute, the evil sought to be remedied, the context, the language, and the historical background" if necessary to help us determine a statute's meaning.  *Lubin*, 213 Ariz. at 498, ¶ 14, 144 P.3d at 512 (quoting *Moreno v. Jones*, 213 Ariz. 94, 98, ¶ 24, 139 P.3d 612, 616 (2006)).   These questions present issues of law, which we review de novo.

- 5 -

*Moreno*, 213 Ariz. at 101-02, ¶ 40, 139 P.3d at 619-20.

**A.   What Address Information Must Signers Provide?**

**¶11**      We must first determine what address information the legislature intended signers to provide on nominating petitions. Jenkins argues that the text of § 16-315(A)(4) requires either an "actual residence address" or a "description of [a] place of residence," and that a post office box is neither.  Jenkins also argues that other statutory language shows the legislature's intent that signers provide a residence address.   Finally, Jenkins urges us to construe "post office" to exclude post office *boxes* because the statute seeks to facilitate the election official's determination of whether the signer is a qualified elector, and a post office box number does not further that purpose.

**¶12**      Hale, on the other hand, argues that § 16-315(A)(4) is written in the disjunctive and that "post office" is an alternative to "actual residence address" or "description of place of residence, city, [or] town," and, therefore, it invites signers to provide post office *box* addresses.

**¶13**      Although the parties briefed and argued the case under § 16-315(A)(4), that section does not control the inquiry before us.   It does, however, provide some guidance.   Section 16-315(A)(4) sets forth the requirements for the *form* of the petition, which the petitions at issue in this case clearly

- 6 -

satisfy. But § 16-315(A) does not specify what the signers of the petition must put in each column on the form. This lack of statutory guidance differs from the procedure for initiative, referendum, and recall elections, for which specific statutes dictate the information signers must provide on the petition forms. *See* Ariz. Const. art. 4, pt. 1, § 1(9) (requiring initiative and referendum petitions to "contain" a declaration, address, and date of signing). *Compare* A.R.S. §§ 19-101, -102 (2002) (describing form of petition), *with* A.R.S. § 19-112(A) (2002) (requiring signers of initiative and referendum petitions to write, "in the appropriate spaces" on the initiative or referendum petition, a residence address or a description of residence location), *and* A.R.S. § 19-205(A) (2002) (same for recall petitions). Section 16-315(A) therefore does not control the disposition of this case because the nominating petitions were prepared exactly as § 16-315(A) requires.

¶14    Nonetheless, the format required by § 16-315(A)(4), when considered with other provisions of the election statutes, provides guidance by suggesting that the legislature intended for signers to provide their residence address or a description of the residence location. Considered alone, § 16-315(A)(4) does not clearly require this information; the column heading indicates that a signer may provide either (1) an "actual residence address" or (2) a "description of [a] place of

- 7 -

residence, city, town or post office." This language arguably invites the signer to provide a "description of [a] . . . post office" that is distinct from one's "place of residence."

¶15    Other statutes, such as A.R.S. §§ 16-315(B)(4) and 16-321(D), however, shed light on the information desired. Section 16-315(B)(4) specifically requires the petition to include the *circulator's* "actual residence address or, if no street address, a description of residence location." We see no reason that the legislature would desire different address information from circulators than from signers since the purpose of the address requirement is to determine whether the signer is a qualified elector and whether the circulator is qualified to register to vote.

¶16    Section 16-321(D) similarly suggests that an actual residence location was desired. That section requires the circulator to verify that the signer "resides at the address given as the signer's residence." The "address given" evidently refers to the information beside the signer's name on the petition form. A circulator could not believe that a person resides at a post office box.

¶17    Instead, we believe that the legislature intended the signer to identify, on the nominating petition form, the signer's actual residence address or some description of its location, whether by reference to "[a] place," or to the

- 8 -

relevant "city, town or post office."[2]

**B.    Are Signatures That Provide a Post Office Box Instead of a Residence Address Automatically Invalid?**

¶18    Having determined that the legislature intended signers to provide their residence address or a description of the residence location, we must nevertheless determine whether signatures must be invalidated if signers provide a post office box address.  We conclude that they need not be.

¶19    Unlike statutes governing initiative, referendum, and recall petitions, no statute directs election officials to invalidate nominating petition signatures that contain a post office box address.[3]  *See* A.R.S. § 19-121.01(A)(1), (A)(3)(b).

---

[2]    Legislative clarification of the statutory requirements for signatures on candidate nominating petitions would be helpful to both candidates and election officials.  In other contexts, the legislature has clearly indicated that a post office box is distinct from a signer's residence address or a description of the location of residence.  *See* A.R.S. §§ 19-101(A), -102(A) (describing form of petition in referendum and initiative petitions to include separate columns for "[a]ctual address" (or, if no street address, a description of residence location) and for "Arizona post office address"); § 16-152(A)(4) (describing voter registration form to permit "post office address" for a mailing address as distinct from required address of actual place of residence or description of residence location).

[3]    Our analysis deals only with nominating petitions. Initiative, referendum, or recall petitions are governed by different statutes, which require the Secretary of State to disqualify signatures "[i]f the residence address or the description of residence location is missing."  A.R.S. §§ 19-121.01(A)(3)(b), -208.01 (2002).  They also require the county recorder, as part of the random sampling procedure, to

We therefore look to the purpose supporting Arizona's nominating petition statutes to determine whether these signatures should be disqualified as a matter of law. *Adams v. Bolin*, 77 Ariz. 316, 320, 271 P.2d 472, 474 (1954) (observing that it is "the intent and purpose of the law, not the letter, that must control"). Nominating petitions are designed to "[weed] out the cranks, the publicity seekers, [and] the frivolous candidates who have no intention of going through with the campaign . . . . yet not keep out those who are serious in their efforts and have a reasonable number of supporters." *Clifton*, 187 Ariz. at 115, 927 P.2d at 775 (quoting *Adams*, 77 Ariz. at 320, 271 P.2d at 475) (first alteration in *Clifton*). We require signers to supply their name, address, and date of signing to "provide a means of identifying [the signer] as a person entitled to sign such [a] petition and prevent forgeries of names, as well as to indicate the precinct in which he lives." *Adams*, 77 Ariz. at 321, 271 P.2d at 475. "[T]he purpose for requiring the address of the petitioner is to afford a convenient method of checking whether [the person signing a petition] is a qualified elector." *Whitman v. Moore*, 59 Ariz. 211, 224, 125 P.2d 445, 452 (1942), *overruled in part on other grounds by Renck v. Superior Court*, 66 Ariz. 320, 327, 187 P.2d 656, 660 (1947). Indeed, "[t]he

---

disqualify signatures if "[n]o residence address or description of residence location is provided." §§ 19-121.02(A)(1), -208.02.

ultimate substantive question . . . is whether the signer is in all respects a qualified elector, and all the requirements in regard to residence, date of signing, verification and the like are to assist interested parties to ascertain this fact." *Id.* at 225, 125 P.2d at 453.[4]

¶20    We have analyzed whether nominating petition signatures are invalid as a matter of law if signers' information varies from what the legislature intended the signers to provide.    In *Clark v. Pima County Board of Supervisors*, 128 Ariz. 193, 195, 624 P.2d 871, 873 (1981), for example, we addressed whether signatures that varied from the affidavits of registration were invalid because, at the time, § 16-315(A) provided that nominating petitions contain a column entitled "signature as registered."    We found that variances did not render the signatures invalid per se; rather, we concluded that minor variations would not invalidate an elector's signature:

> We believe that the Legislature intended to require stricter adherence to form by the use of the clear language of A.R.S. § 16-315(A), but we do not believe that such action means that minor variations

---

[4]    We reject Jenkin's argument that *Whitman* applies only to cases involving initiatives and referenda, and not to those involving nominating petitions.    We are mindful of the differences between initiatives, referenda, and nominating petitions, but we have looked to *Whitman* on several occasions in the context of nominating petitions. *See, e.g.*, *Pacuilla v. Cochise County Bd. of Supervisors*, 186 Ariz. 367, 368, 923 P.2d 833, 834 (1996) (noting that "the reasoning [of *Whitman*] extends to the power to nominate persons for office"); *Clark*, 128 Ariz. at 195, 624 P.2d at 873 (same).

in name signing would disqualify an otherwise valid signature from consideration . . . .

When the signature appearing on a nominating petition is not exactly the same as that on the affidavit of registration, a prima facie case is made by the contestant that the signer is not a registered voter, but the proponent of the petition is free to make an affirmative showing that the signature is in fact that of a properly registered voter. If the trier of fact is satisfied with the showing made by the proponent, the signature should be accepted.

*Id.*

**¶21** We find the reasoning in *Clark* instructive. As in the case before us, *Clark* dealt not with whether the petition form itself complied with § 16-315(A), but with whether the signers completed the form in accordance with the legislature's intent. Providing a post office box address, which is not what the legislature intended, *see supra* ¶¶ 11-17, is not unlike signing the nominating petition with a signature that differs from the name "as registered." In light of the statutory purpose of determining whether signers are qualified electors, we find it difficult to see how a post office box address renders a signature invalid per se if an elections official can verify that the signer is a qualified elector. In some instances, the election official may even have the post office box address on file. *See* A.R.S. § 16-152(A)(4) (describing registration form to allow registrants to provide a "post office address" as a mailing address). Invalidating signatures of duly registered electors does not further the purpose, intent, or spirit of

- 12 -

Arizona's nominating petition statutes. *See Whitman*, 59 Ariz. at 225, 125 P.2d at 453.

¶22      Of course, providing a post office box address is not without consequence. If an elector challenges the signatures of those petition signers who failed to provide a residence address or a description of the residence location, the presumption of validity of those signatures disappears and the absence of the information provides a prima facie showing that the signers are not qualified electors. The proponent, however, may demonstrate to the trier of fact that the challenged signatures are those of qualified electors. If the trier accepts the proponent's showing, the signatures are deemed valid and should be counted unless some other ground requires disqualification.

¶23      Here, Jenkins challenged the signatures on various grounds, but primarily on the ground that signers provided a post office box address. As to those signatures, the absence of a residence address or a description of the residence location displaced the presumption of validity, and the burden shifted to Hale to re-establish the validity of the signatures. Hale offered evidence from the county recorders' review of the signatures. In Apache County, the recorder verified that many of the signers who provided post office box addresses were, in fact, registered voters. Jenkins presented no evidence to rebut Hale's evidence that the signers were qualified electors. The

superior court therefore appropriately counted those signatures. *See* A.R.S. § 16-121.01.

### III. CONCLUSION

**¶24**      Because the number of valid signatures exceeded the 522 signatures Hale needed to be placed on the primary ballot, we affirm the judgment of the superior court.

_____
Rebecca White Berch, Vice Chief Justice


CONCURRING:


_____
W. Scott Bales, Justice


_____
Patrick Irvine, Judge*


*Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Patrick Irvine, Judge of the Court of Appeals, Division One, was designated to sit in this matter.