IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

IN DIVISION

---

**PATRICK MCKENNA,**
*Plaintiff/Appellant,*

*v.*

**JAVIER SOTO, A DEMOCRATIC PRIMARY CANDIDATE FOR ARIZONA HOUSE OF REPRESENTATIVES IN LEGISLATIVE DISTRICT 3, ET AL.,**
*Defendants/Appellees.*

---

No. CV-20-0123-AP/EL
Filed February 17, 2021

---

Appeal from the Superior Court in Maricopa County
The Honorable Daniel J. Kiley, Judge
No. CV2020-004839
**AFFIRMED**

---

COUNSEL:

Roopali H. Desai, Marvin C. Ruth, Kristen Yost, Coppersmith Brockelman PLC, Phoenix, Attorneys for Patrick McKenna

Javier Soto, In Propria Persona, Tucson

Laura Conover, Pima County Attorney, Civil Division, Daniel Jurkowitz, Deputy County Attorney, Tucson, Attorneys for F. Ann Rodriguez and the Pima County Board of Supervisors, Ally Miller, Ramon Valadez, Sharon Bronson, Steve Christy, and Betty Villegas

JUSTICE BEENE authored the Opinion of the Court, in which VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK and LOPEZ joined.

JUSTICE BEENE, Opinion of the Court:

¶1        This case concerns Patrick McKenna's challenge to nomination petitions filed by Javier Soto, a candidate for the Democratic Party's nomination for the Arizona House of Representatives in Legislative District 3. McKenna appealed from a superior court judgment finding that Soto obtained enough valid signatures to qualify for placement on the primary election ballot. This Court issued an order affirming the superior court's judgment in this election case. We now explain the basis for our decision.

## BACKGROUND

¶2        To qualify for the primary ballot, Soto needed 413 valid signatures on his nomination petitions. *See* A.R.S. § 16-322(A)(3) ("Nomination petitions shall be signed by a number of qualified signers equal to: . . . If for a candidate for the office of member of the legislature, at least one-half of one percent but not more than three percent of the total number of qualified signers in the district from which the member of the legislature may be elected."). Soto submitted petition sheets that contained 460 signatures.

¶3        McKenna, a qualified elector, challenged approximately 200 of these signatures pursuant to A.R.S. § 16-351(A).[1] As relevant here,

---

[1]        McKenna's complaint initially challenged 205 signatures, but McKenna later submitted a supplemental exhibit challenging only 204 signatures. The Recorder later determined that McKenna's exhibits only challenged 200 signatures. Because we conclude McKenna's challenges to the signatures fail, *infra* ¶ 29, this issue is not determinative of Soto's placement on the ballot.

McKenna alleged that 40 signatures were invalid because they included an "incomplete date" and 160 signatures were invalid because they included an "incomplete address" for the signer. While all of the "incomplete date" signatures listed a day and month, none of them listed a year. Likewise, while all of the "incomplete address" signatures contained a house number and street name, none of them contained a city/town, state, or zip code.

¶4 The Pima County Recorder ("Recorder") reviewed the challenged signatures and summarized its findings in a memorandum ("Memorandum"). *See* § 16-351(E). The Recorder invalidated 10 of the 40 "incomplete date" signatures, relying on the Arizona Secretary of State 2019 Elections Procedures Manual ("2019 EPM"), which directs county recorders to reject signatures with "no date or an incomplete date." *See* Ariz. Sec'y of State, 2019 Elections Procedures Manual A58 (2019). However, it validated 130 of the 160 "incomplete address" signatures because those 130 signers provided sufficient information for the Recorder to determine that they were eligible to sign the petition. Ultimately, the Recorder determined that Soto had seven more signatures than was required for the ballot.

¶5 After a hearing, the trial court found in relevant part that six of the ten signatures invalidated by the Recorder due to "date issues" were, in fact, valid, and the Recorder properly concluded that the 130 "incomplete address" signatures were valid. Soto therefore had enough signatures to qualify for placement on the ballot, and the court denied McKenna's requested relief.

¶6 This appeal followed. We have jurisdiction pursuant to article 6, § 5(3) of the Arizona Constitution and § 16-351(A).

## DISCUSSION

¶7 McKenna argues the trial court erred by finding the "incomplete date" and "incomplete address" signatures valid. Typically, a nomination petition need only substantially comply with the statutory requirements; strict compliance is not necessary "[a]bsent a clear statement that the legislature intended a particular form requirement to be indispensable." *Bee v. Day*, 218 Ariz. 505, 507 ¶ 10 (2008); *accord Adams v.*

*Bolin*, 77 Ariz. 316, 322 (1954). When there is a challenge to the content of a nomination petition, we review de novo whether "'a petition substantially complies with the statutory requirements' before denying access to a ballot." *Bee*, 218 Ariz. at 507 ¶ 8 (quoting *Moreno v. Jones*, 213 Ariz. 94, 101–02 ¶ 40 (2006)).

## I.

¶8 In Arizona, candidates seeking placement on an election ballot "must gather signatures from qualified electors and file them with the appropriate elections official." *Jenkins v. Hale*, 218 Ariz. 561, 562 ¶ 6 (2008) (citing § 16-322(A)). The signatures ensure candidates have "adequate support from eligible voters to warrant being placed on the ballot." *Id.* (quoting *Lubin v. Thomas*, 213 Ariz. 496, 498 ¶ 15 (2006)).

¶9 Nomination petitions must contain the following information for each signatory: signature; printed name; actual residence address, description of place of residence or Arizona post office box address, city or town; and date of signing. A.R.S. § 16-315(A)(4)(a)–(d).

¶10 McKenna argues the trial court erred by finding the "incomplete date" signatures valid because: (1) § 16-315(A)(4) and the 2019 EPM require a complete date; (2) a partial date cannot "substantially comply" with the complete date requirement; and (3) Soto failed to affirmatively proffer evidence supporting the court's rehabilitation of the "incomplete date" and "incomplete address" signatures. We disagree.

## II.

¶11 A prospective candidate who wishes to be placed on an election ballot must collect the signatures of qualified electors on "nomination petitions," which must contain enumerated statutory requirements, including a "date of signing." *See* A.R.S. §§ 16-314(B), -315(A)(4). "Date of signing" is not defined in the statute. Therefore, we must first determine what information the legislature intended a qualified signer provide in order to comply with the statutory obligation.

¶12      In interpreting a statute, our goal is to effectuate the legislature's intent. *SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480 ¶ 8 (2018). "When the plain text of a statute is clear and unambiguous," it controls unless an absurdity or constitutional violation results. *State v. Christian*, 205 Ariz. 64, 66 ¶ 6 (2003). But when, as here, the "text alone does not resolve the parties' dispute," we must "attempt to glean and give effect to the legislature's intent, considering the statute's context, effects and consequences, and spirit and purpose." *Am. Fam. Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 490–91 ¶ 10 (2012).

¶13      The intent and purpose for requiring a nomination petition to contain the information set forth in § 16-315(A)(4) is to ensure that the signer is a qualified elector. *Jenkins*, 218 Ariz. at 564 ¶ 19. "Indeed, '[t]he ultimate substantive question . . . is whether the signer is in all respects a qualified elector, and all the requirements in regard to residence, date of signing, verification and the like are to assist interested parties to ascertain this fact.'" *Id.* at 564–65 ¶ 19 (quoting *Whitman v. Moore*, 59 Ariz. 211, 225 (1942)). Additionally, the date of signing is important and necessary to determine whether the signature was collected before the date the candidate filed his or her statement of interest. *See* A.R.S. § 16-311(H) ("Any nomination petition signatures collected before the date the statement of interest is filed are invalid and subject to challenge.").

¶14      In order to ascertain whether a petition signer is a qualified elector, it is essential that the information collected in the nomination petition be thorough and complete. Accordingly, we conclude the legislature intended that the signer provide a complete date, consisting of the day, month, and year, on the nomination petition. Because Soto's nomination petitions did not contain complete dates, the signatures did not strictly comply with the requirements of § 16-315(A)(4).

¶15      Although it is uncontroverted that Soto's nomination petitions included signatures that did not contain a complete date, we must nevertheless determine whether the trial court was correct that these signatures substantially complied with § 16-315(A)(4). *See Dedolph v.*

*McDermott*, 230 Ariz. 130, 133 ¶ 17 (2012). We conclude that the questioned signatures substantially complied with the "date of signing" obligation.

**¶16** In ascertaining whether the non-compliant signatures substantially comply with the statute, we look at the petition as a whole to determine whether the omission frustrates the purpose of the statute. *See Bee*, 218 Ariz. at 508 ¶ 13 ("[T]o determine whether Bee's petitions substantially comply we look at the nominating petition form as a whole and focus on whether 'the omission of' the date on which the vacant term expired 'could confuse or mislead electors signing the petition.'" (quoting *Moreno*, 213 Ariz. at 102 ¶ 42)). Because the purpose and intent underlying the "date of signing" requirement is to ensure that petition signers are qualified electors, we do not believe the legislature intended to disqualify a signature if a complete date accompanying the signature can be sufficiently established by other information contained in the petition. *See Jenkins*, 218 Ariz. at 565 ¶ 21 ("Invalidating signatures of duly registered electors does not further the purpose, intent, or spirit of Arizona's nominating petition statutes.").

**¶17** Applying this approach here, the trial court did not err by concluding the signatures were valid. After reviewing the petition sheet containing the eight signatures Soto sought to have restored, the court concluded six of the signatures were valid because "a review of the petition sheets as a whole . . . le[ft] no doubt that 2020 [was] the year in which each of these six signatures was provided." It based its conclusion on two observations: first, that the challenged signatures appeared on the same page as other signatures that had the same month and day but also included the year; and second, that the words "Revised 07/31/2019, Secretary of State" were printed along the bottom margin of the petition sheet, meaning it was impossible for signers to sign before that date. We agree with the court that a review of the information contained in the petition sheet revealed the validity of the questioned signatures. The court accordingly did not err by finding that these signatures substantially complied with § 16-315(A)(4).

**¶18** In reaching this conclusion, we reject McKenna's argument that Soto failed to present evidence to rehabilitate the challenged

signatures. Once the presumption of validity regarding the questioned signatures is displaced, the burden shifts to the proponent of the signatures to prove the signer was a qualified elector and eligible to sign the petition. *See Jenkins*, 218 Ariz. at 565–66 ¶ 23.

**¶19** Here, the parties stipulated to the admission of the nomination petitions in evidence. Relying on the petitions, Soto asserted the signatures containing the day and month substantially complied with the "date of signing" requirement. As previously indicated, the trial court's review of the petitions allowed it to properly conclude that the questioned signatures substantially complied with § 16-315(A)(4). Because Soto relied on the evidence in the record, he met the burden of proving that the signers were eligible to sign the petition.

**¶20** Similarly, McKenna's reliance on the 2019 EPM as authority to reject the non-compliant signatures fails. The purpose of the 2019 EPM is to ensure election practices are consistent and efficient throughout Arizona. The EPM is promulgated pursuant to A.R.S. § 16-452, which requires that the Secretary of State "prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting, and of producing, distributing, collecting, counting, tabulating and storing ballots." § 16-452(A). The EPM also contains guidance on matters outside these specific topics, including candidate nomination petition procedures, *see* 2019 EPM at 107–23, and the regulation of petition circulators, *see id.* at 250–54. These other topics, however, fall outside the mandates of § 16-452 and do not have any other basis in statute. Because the statute that authorizes the EPM does not authorize rulemaking pertaining to candidate nomination petitions, those portions of the EPM relied upon by McKenna to invalidate the signatures without a complete date were not adopted "pursuant to" § 16-452.

**¶21** Accordingly, the 2019 EPM's directive to reject a signature without a complete date does not have the force of law, and simply acts as guidance. Soto's noncompliance with the 2019 EPM did not render the questioned signatures invalid.

### III.

¶22    Next, McKenna asserts the trial court erred by finding the "incomplete address" signatures valid because: (1) neither Soto nor the Recorder presented evidence to rehabilitate the signatures; and (2) the trial court relied on an unsupported statement by the Recorder that "all 130 [signers] were . . . eligible to sign the nomination petition." He also claims the court erred in finding the challenged "incomplete address" and "incomplete date" signatures valid without reviewing them for overall validity. We disagree.

¶23    We have previously held that "the legislature intended [a] signer to identify, on the nominating petition form, the signer's actual residence address or some description of its location, whether by reference to '[a] place,' or to the relevant 'city, town or post office.'" *Jenkins*, 218 Ariz. at 564 ¶ 17. However, we also concluded that signatures need not be invalidated for failing to strictly comply with this requirement. *Id.* ¶ 18.

¶24    "Actual residential address" is not defined by statute or our caselaw. As mentioned above, when the language of a statute is not clear and unambiguous, "we apply secondary interpretive principles, such as considering 'the statute's subject matter, historical background, effect and consequences, and spirit and purpose.'" *Molera v. Hobbs*, 250 Ariz. 13, 24 ¶ 34 (2020) (quoting *Rosas v. Ariz. Dep't of Econ. Sec.*, 249 Ariz. 26, 28 ¶ 13 (2020)).

¶25    Similar to the "date of signing" requirement, the purpose of requiring a signer's address is to "provide a means of identifying [the signer] as a person entitled to sign such [a] petition and prevent forgeries of names, as well as to indicate the precinct in which he lives." *Jenkins*, 218 Ariz. at 564 ¶ 19 (quoting *Adams*, 77 Ariz. at 321). Accordingly, considering the purpose of requiring an "actual residence address," we conclude the legislature intended signers to provide a street address and a city or town, or a street address and a zip code. Because of this, a signer must provide a city/town or zip code under "actual address" so the election official can ascertain whether the signer was eligible to sign the petition.

¶26    However, as with the "date of signing" requirement, an election official need not necessarily invalidate signatures without a city/town or a zip code. *See id.* ¶ 18. If the official can verify the eligibility of a voter using the incomplete address, the purpose of the requirement is fulfilled. *See* § 16-351(E)–(F); *Lohr v. Bolick*, 249 Ariz. 428, 431 ¶ 10 (2020) (holding that a legislative candidate that failed to comply with the statutory requirement to list her actual residence address on her nomination petition nonetheless substantially complied by listing a private mailbox address).

¶27    As applied here, the trial court did not err by finding the signatures valid. The Recorder's Memorandum and testimony provided at the hearing established that the Recorder had been able to use the information provided by the signers to locate the signers' voter registration records. Based on this review, the Recorder determined that all 130 signers were eligible to sign. Accordingly, the court did not err by finding the signatures valid.

¶28    As with the "incomplete date" signatures, we reject McKenna's argument that Soto had to affirmatively present evidence that the signers were eligible to sign his nomination petition. It is true that we have stated that, once the presumption of validity disappears, "[t]he proponent [of the signatures] . . . may demonstrate to the trier of fact that the challenged signatures are those of qualified electors." *Jenkins*, 218 Ariz. at 565 ¶ 22. We now clarify that the proponent need not present additional evidence if sufficient evidence in the record demonstrates the signatures are valid. The court may rely on the information in the record before it in making its determination. *Cf.* § 16-351(E) ("The county recorder . . . shall perform petition signature verifications for nomination petition challenges . . . and shall provide testimony and other evidence on request of any of the parties to the challenge.").

¶29    Further, we reject McKenna's argument that the trial court's reliance on the Recorder's testimony was erroneous because she did not determine whether the 130 signatories resided in the correct legislative district. McKenna only challenged nine signatures for both listing an incomplete address and for being signed by an out-of-district signer, and the Recorder invalidated all nine signatures under the out-of-district

ground. Although the Recorder must verify signatures against challenges pursuant to § 16-351(E), it need not conduct a review to ascertain the overall validity of a questioned signature. The Recorder *may* "invalidate signatures for legitimate reasons other than those specifically alleged in the challenger's complaint," but is "not obligate[d] . . . to search for defects other than those asserted by the challenger." *McClung v. Bennett*, 225 Ariz. 154, 157 ¶ 13 (2010) (quoting *Lubin*, 213 Ariz. at 499 ¶ 19). For the same reason, McKenna's argument that the Recorder did not review the "incomplete date" signatures for overall validity fails. The challenger bears the burden of establishing that the challenged signatures are invalid, and requiring the Recorder to search for other reasons to invalidate the signatures would defeat the presumption of validity that attaches to petition signatures.

## CONCLUSION

**¶30** We conclude that on this record: (1) the signatures dated by a signer with a month and day but no year substantially complied with the requirement of a "[d]ate of signing"; and (2) the signatures that listed the signer's street address but no municipality, state, or zip code substantially complied with the requirement of an "actual residence address." The Recorder was able to verify voter eligibility on the basis of the information that was provided. Accordingly, the trial court did not err by finding the signatures valid, and we affirm its ruling.