Terence G. O'Brien, Jr., Law Office of Terence G. O'Brien, PLLC, St. Paul, Minnesota (for appellant)
Lyndsey M. Olson, St. Paul City Attorney, Judith A. Hanson, Anthony G. Edwards, Assistant City Attorneys, St. Paul, Minnesota (for respondents)
Considered and decided by Cleary, Chief Judge; Bjorkman, Judge; and Rodenberg, Judge.
RODENBERG, Judge *44 Appellant Peter K. Butler challenges the district court's grant of summary judgment dismissing his petition under Minn. Stat. § 204B.44 to correct alleged errors, omissions, or wrongful acts by respondent City of St. Paul in rejecting appellant's petition under Minn. Stat. § 410.12 to amend the St. Paul City Charter. Because appellant failed to provide the district court with affirmative and admissible evidence that St. Paul election officials erred in rejecting certain signatures on the petition based on the SVRS, we affirm.
FACTS
Appellant and others gathered signatures in support of a petition to amend section 7.01 of the St. Paul City Charter. The proposed amendment sought to change the home-rule-charter provision that city elections shall occur in odd-numbered years to require city elections to occur in even-numbered years. In order for the charter-amendment proposal to be placed on the ballot, a "petition of voters equal in number to five percent of the total votes cast at the last previous state general election in the city" was required. Minn. Stat. § 410.12, subd. 1. The 2016 state general election was the relevant general election. The parties agree that, to meet the five-percent statutory threshold, 7,011 signatures were needed on the petition. On July 7, 2017, appellant submitted his petition with 7,656 signatures to the Ramsey County Elections Office (elections office), St. Paul's appointed agent for reviewing and verifying such petitions.
The elections office inspected the 786-page petition and used the SVRS, which contains information for every registered Minnesota voter, to determine the petition's sufficiency. Seven days after appellant submitted the petition, a Ramsey County Elections Specialist emailed appellant a notice of insufficiency. The notice *45 explained that the petition contained 5,866 valid signatures and that appellant had ten days to cure the insufficiency. Appellant requested that the elections office provide him with further details. The elections office promptly responded by providing the certification of petition insufficiency and invited appellant to submit any further questions. The elections office explained that the petition was insufficient because 1,529 people who signed the petition as residents of St. Paul were not registered to vote in St. Paul, and 231 signers did not provide all of the required information.[1] The elections office invalidated 49 signatures for other reasons.
Appellant did not submit additional signatures or information within the ten-day time period. Instead, he filed a petition in the district court, under Minn. Stat. § 204B.44, to correct errors or omissions, alleging that the notice of insufficiency and certificate of insufficiency failed to comply with Minn. Stat. § 410.12, subd. 3.
Minn. Stat. § 204B.44 allows for the filing of a petition with the district court for the correction of errors, omissions, or wrongful acts made by "any election judge, municipal clerk, county auditor, canvassing board or any of its members, the secretary of state, or any other individual charged with any duty concerning an election." Minn. Stat. § 204B.44(a)(4). The petition must describe the error, omission, or wrongful act, and the correction sought by the petitioner, and "shall be filed with ... any judge of the district court in that county in the case of an election for county, municipal or school district office." Id. (b). Appellant argued to the district court that the notice of insufficiency did not comply with the statute because it did not set forth any particulars regarding the defects. He claimed that, until he was informed of the exact defects, he was unable to obtain additional signatures that would not be determined to be similarly defective.
Appellant moved the district court for an immediate hearing under Minn. Stat. § 204B.44 to compel the elections office to comply with Minn. Stat. § 410.12, subd. 3, or to show cause as to why the requested relief should not be granted. In the alternative, appellant requested that the district court direct the elections office to certify his section 410.12 petition as sufficient so that the proposal would appear on the November 7, 2017 general election ballot, or strike the certification of insufficiency and order the elections office to individually reexamine all signatures. The district court directed the elections office to correct the claimed error or show cause for not doing so.
Appellant also moved for summary judgment declaring his section 410.12 petition sufficient. Appellant stated by affidavit that he had purchased an official registered-voter list from the secretary of state and compared that list with the signatures the elections office determined were invalid.[2] He claimed that, in multiple instances, the elections office invalidated the signatures of individuals who were listed on St. Paul voter-registration lists when they signed the petition.
*46 Respondents moved to dismiss appellant's petition, arguing that the elections office was not required to explain why each signature was rejected and that appellant failed to establish that respondents had committed any error. The elections office supplied the district court with information that it reviewed the petition a second time, identified each rejected signature, and produced a spreadsheet including the reasons it rejected certain signatures. The elections office again used the SVRS to determine the sufficiency of the petition. The elections office adjusted its determination of the number of valid signatures to 5,951 (up from 5,866) and the corresponding number of invalid signatures to 1,712.
At a hearing in August 2017 on these competing motions, the parties agreed that additional discovery was necessary concerning whether respondents committed an error, omission, or wrongful act when it rejected the signatures. The parties agreed to stay the proceedings and hold over the voter-circulated petition for submission of a ballot question at the 2018 general election.
After discovery, the district court revisited the parties' motions concerning whether respondents committed an error, omission, or wrongful act in the issuance of the notice and certification of insufficiency. The district court determined that election officials "fully complied with their statutory duties set forth in Minn. Stat. § 410.12 with respect to the delivery of the certificate to the required entity, the required contents of that certificate, and delivery of notice of insufficiency to [appellant]" and therefore dismissed the petition in part. The district court concluded that the petition "does not state a claim that respondents committed an error, omission, or wrongful act with respect to the issuance of the certificate or notice."
Using the SVRS, respondents later reviewed the petition for a third time and for a fourth and final time, after which they reported that 5,956 signatures were valid and 1,700 signatures were invalid. The parties later stipulated that at least 5,957 signatures were valid. The home-rule-charter measure was not put on the November 2017 ballot, and respondents moved for summary judgment in December 2017.
After a February 2018 hearing on the summary-judgment motions, the district court concluded that appellant "produced some record evidence that 980 of the rejected signatories were residents of St. Paul and registered voters eligible to vote at the time they signed the petition or at the time of submission of the petition to respondents." The district court determined that, even if those 980 signatures were added to the 5,957 valid signatures, the petition would remain 74 signatures short of the statutory requirement. Appellant identified an additional 147 signatures that he claimed were improperly rejected. Considering those additional signatures, the district court determined that appellant "failed to meet his burden to identify any error, omission or wrongful act in the rejection of the remaining 147 signatures [appellant] now identifies as erroneously rejected." The district court found no error in the election office's validation process, because the elections office "accepted signatures upon reasonable verification in the SVRS of the information set forth on the petition." The district court therefore granted summary judgment for respondents and dismissed appellant's petition.
Appellant requested that the district court allow him to file a motion to reconsider. Appellant argued that the district court should hear the motion because, following the receipt of the original notice of insufficiency, he had obtained additional signatures. He claimed that he did not *47 provide the district court with those additional signatures earlier because he was waiting for a legal determination to be made on the original petition. He also requested that the district court determine whether the 980 signatures that the district court assumed as valid for purposes of analysis were actually valid, and asked the district court to allow him to submit a supplemental affidavit to support his original summary-judgment motion. The district court denied appellant's request.
This appeal followed.
ISSUE
Did the district court err by granting summary judgment dismissing the petition for failure of appellant to meet his burden to establish an error, omission, or wrongful act by respondents?
ANALYSIS
St. Paul is a home rule charter city under Minnesota Statutes chapter 410. The city's charter allows its citizens to bring forth ballot initiatives, referenda, and proposed amendments to the city charter. Minn. Stat. § 410.12, subd. 1a.[3] An argument requiring the interpretation of a statute is reviewed de novo. Vasseur v. City of Minneapolis , 887 N.W.2d 467, 469-70 (Minn. 2016).
Appellant argues that the district court erred in granting summary judgment, because respondents' procedure for verifying signatures on the petition was improper. He argues that we should construe Minn. Stat. § 410.12 as requiring only that individuals be residents eligible to vote on the amendment at the time the petition is signed, because the statute's residency requirement is based on where one lives, not where one is registered to vote according to state records. Therefore, he argues, respondents' reliance on the SVRS was an error, omission, or wrongful act.
Appellate courts review a district court's summary judgment decision de novo. Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC , 790 N.W.2d 167, 170 (Minn. 2010). "[W]e determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." Id. "The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01.[4] We view the evidence in the light most favorable to the party against whom summary judgment was granted. Firefighters Union Local 4725 v. City of Brainerd , 920 N.W.2d 232, 238 (Minn. App. 2018). The submission of affidavits containing mere conclusory allegations is insufficient to withstand summary judgment. Nowicki v. Benson Props. , 402 N.W.2d 205, 208 (Minn. App. 1987).
*48 Minn. Stat. § 410.12 requires voter signatures equal in number to at least five percent of the total votes cast in the last previous general city election.
Under our state constitution, amendment of a home rule city charter may be proposed "by a petition of five percent of the voters of the local government unit." Minn. Const. art. XII, § 5. "[T]he legislature has set forth additional methods of charter amendment in Minnesota Statutes section 410.12, including a certification process for amendments proposed by a citizens' petition." Minneapolis Term Limits Coalition v. Keefe , 535 N.W.2d 306, 308 (Minn. 1995). "The charter commission may propose amendments to [the] charter and shall do so upon the petition of voters equal in number to five percent of the total votes cast at the last previous state general election in the city." Minn. Stat. § 410.12, subd. 1. "Only registered voters are eligible to sign the petition" and a petition must contain a summary setting forth the nature of the proposed amendment. Minn. Stat. § 410.12, subd. 1. The petition must contain each petitioner's signature and "must indicate after the signature the place of residence by street and number, or other description sufficient to identify the place." Id. , subd. 2.
Similarly, Minn. Stat. § 200.039 provides:
If a statute:
(1) provides that a ballot question may or must be placed on the ballot when a specified number of individuals have signed a petition; and
(2) specifies the number of individuals required under the statute as a percentage of the individuals who voted in a previous election, the statute must be construed to mean that the petition must be signed by a number of current voters equal to the required percentage specified in the statute.
Minn. Stat. § 200.039 (2018). But "[t]he statute must not be construed to restrict the eligibility to sign the petition to only those individuals who were eligible to cast ballots or who did cast ballots in the previous election." Id.
The parties agree that, using the 2016 state general election as a measure, the number of required signatures for this petition was 7,011. Based on the date the petition was submitted, the 2016 general election is the proper measure. Minn. Stat. § 410.12, subd. 1.
Elections officials do not err by relying on the SVRS to determine the adequacy of a petition under Minn. Stat. § 410.12.
A petition to amend a home rule charter must be filed with the charter commission, so that the signatures on the petition can be verified. Minn. Stat. § 410.12, subd. 3. The petition is then transmitted to the city council, and the city clerk determines whether each signature is "properly attested and whether the petition is signed by a sufficient number of voters." Id. If the petition has the required number of signatures, then the proposed amendment is certified to the city council, and the city council determines how the proposal should be stated on the ballot. Id. , subd. 4; Bicking v. City of Minneapolis , 891 N.W.2d 304, 306 (Minn. 2017).
Here, the Ramsey County Elections Office, the city's appointed agent, determined whether the petition "is properly attested and whether the petition is signed by a sufficient number of voters."[5] Minn. Stat. § 410.12, subd. 3.
Appellant argues that we should construe section 410.12 as requiring both that the signers of the petition be registered *49 voters who could vote on the amendment at the time of signing and that the statute's residency requirement is based on where the signer lives, not where the signer is registered to vote. The parties seem to agree that, if a registered voter was not residing in St. Paul in the previous election but now resides in St. Paul and remains a registered voter, that person is eligible to sign a petition under section 410.12.[6] We agree.
Section 410.12 states that "[o]nly registered voters" are eligible to sign a charter amendment petition. Minn. Stat. § 410.12, subd. 1. The term "registered voter" is unambiguous. See Am. Tower, L.P. v. City of Grant , 636 N.W.2d 309, 312 (Minn. 2001) ("Where the legislature's intent is clearly discernible from plain and unambiguous language, statutory construction is neither necessary nor permitted and courts apply the statute's plain meaning.").
Every registered Minnesota voter is identifiable in the SVRS. Minn. Voters All. v. Simon , 885 N.W.2d 660, 663 (Minn. 2016) ; see also Minn. Stat. § 201.081, subd. 1(a) (2018) ("The statewide registration system is the official record of registered voters."). The SVRS database is developed and maintained by the secretary of state and the system allows county auditors, municipal and school district clerks, and the secretary of state to have electronic access to review and search the database. Minn. Stat. § 201.022, subd. 1(9) (2018). County auditors and the secretary of state may update the information in the system concerning the status of registered voters "to provide accurate and up-to-date records." Id. , subd. 1(8) (2018). The SVRS also maintains information about each voter's residence. "The residence of an individual is in the precinct where the individual's home is located, from which the individual has no present intention of moving, and to which, whenever the individual is absent, the individual intends to return." Minn. Stat. § 200.031(1) (2018).
Appellant argues that the elections office should have accepted the signatures and the associated residence addresses of the signers at face value because nominating petitions do not require independent verification of a signer's address. See Minn. Stat. § 204B.10, subd. 3 (2018) ("The official with whom nominating petitions are filed shall inspect the petitions in the order filed to verify that there are a sufficient number of signatures of individuals whose residence address as shown on the petition is in the district where the candidate is to be nominated."). In dismissing appellant's petition, the district court observed that "[appellant's] argument is unsupported by any legal authority and contravenes longstanding and well-established constitutional, statutory and common law providing that signatories to a petition to amend a municipal charter must inhabit that municipality." We agree with the district court.
"Only registered voters are eligible to sign" a charter-amendment petition. Minn. Stat. § 410.12, subd. 1. Each individual signing the petition must include a place of residence "sufficient to identify the place" to enable ascertainment that the person is a resident of the home rule charter city. For purposes of section 410.12, a signatory's residence is presumptively determined by where the person is registered. Because the SVRS is the official *50 source from which to determine whether someone is a registered voter, the elections office is not required to look beyond the SVRS to verify signatures, absent some evidence that the SVRS is incomplete, incorrect, or outdated. Cf. Beaulieu v. Mack , 788 N.W.2d 892, 897 (Minn. 2010) (noting that Minn. Stat. § 204B.10, subd. 3, which guides nominating petitions, requires election officials, not challengers, to "inspect the petitions ... to verify that there are a sufficient number of signatures of individuals whose residence address as shown on the petition is in the district where the candidate is to be nominated").
The Minnesota Supreme Court faced a similar issue in Beaulieu . In Beaulieu , the county auditor rejected 207 signatures on a nominating petition bearing 556 signatures, leaving Beaulieu 151 signatures short of the 500 signatures required for a nominating petition. Id. at 894. The supreme court noted that "[u]nder Minnesota law, therefore, the petition itself must include enough information for election officials to determine that the candidate has presented sufficient signatures of individuals who reside within the district and would be eligible to vote for the candidate if nominated." Id. at 897. The same premise applies here. In order to determine whether appellant presented sufficient signatures of individuals who reside within the city and would be eligible to vote on the amendment, the elections office needed to confirm that at least the required minimum number of signers were registered voters of the local government unit. Respondents, relying on the SVRS, were unable to verify that at least 7,011 signers were St. Paul residents registered to vote. Because the SVRS contains the most recent and up-to-date voter-registration information, respondents did not err by relying on the SVRS to verify the petition signatures.
When officials determine a petition to be inadequate, the petitioner has the option to timely amend or supplement the petition or, in the alternative, to petition the district court for correction of an error, omission, or wrongful act under Minn. Stat. § 204B.44.
Once elections officials determined that appellant's petition was inadequate, appellant had two options. Under Minn. Stat. § 410.12, after the city clerk (or in this case, the city's appointed agent) notifies a petitioner of the particulars in which the petition is defective, a petitioner can amend or supplement the petition with additional valid signatures. Minn. Stat. § 410.12, subd. 3. A petitioner has ten days to amend the petition after the city clerk's certification of insufficiency. Id.
Appellant had a second option. A petitioner who alleges that there were problems in the verification process may file a petition in district court to correct an error, omission, or wrongful act under Minn. Stat. § 204B.44. This is the option appellant selected and, in making that choice, appellant elected to forego amending his charter-amendment petition.
When the petitioner elects to proceed under section 204B.44, the petitioner bears the burden of demonstrating an error, omission, or wrongful act by admissible evidence.
A petitioner proceeding under Minn. Stat. § 204B.44 bears the burden of demonstrating an error, omission, or wrongful act which, if shown, the district court is authorized by statute to correct. See Paquin v. Mack , 788 N.W.2d 899, 904 (Minn. 2010) ("[Petitioner] has the burden to prove that leaving his name off the ballot is an error that must be corrected under Minn. Stat. § 204B.44.").
An "error" is a "deviation from accuracy or correctness; a mistake." Random House *51 Dictionary of the English Language 659 (2d ed. 1987). An "omission" is "something left out, not done, or neglected." Id. at 1351. And an act is "wrongful" when it is "unjust or unfair," or is "unlawful." Id. at 2193. Here, appellant makes no claim that respondents' counting or arithmetic was inaccurate. The parties likewise worked diligently to ensure that no signatures were left unexamined or not considered. Appellant's only claim of "error, omission, or wrongful act" is that respondents should have accepted signatures on the petition that claimed a registered voter to reside in St. Paul despite that voter being registered to vote elsewhere.
When he opted to forego supplementing the petition with additional signatures or providing evidence (beyond the petition itself) that persons signing the petition were actually registered St. Paul voters, despite SVRS records indicating otherwise, appellant took on the obligation of proving some error. As discussed, the burden of showing error is necessarily on appellant. The district court cannot assume an error, omission, or wrongful act. See League of Women Voters Minn. v. Ritchie , 819 N.W.2d 636, 640 (Minn. 2012) (acknowledging that under Minn. Stat. § 204B.44, a petitioner bears the burden of demonstrating the error the petitioner seeks to have corrected by the court). Appellant made no effort to carry that burden. All appellant has produced is a petition with a number of addresses different than those contained in the SVRS. Appellant must show more than a difference or a variance. He must demonstrate an error, omission, or wrongful act.
The voluminous record, which includes thousands of pages, indicates that the elections office carefully considered each signature and attempted to verify it using established procedures, including the SVRS. Respondents reviewed the petition four times. The elections office attempted to determine if one or more names from the SVRS could have been matched to each name on the petition. Similarly, if a name on the petition was unclear, the office used nicknames and a less-than-a-full-name search in an effort to find a matching registered St. Paul voter in the SVRS.
Petitioner failed to produce admissible evidence that the respondents' reliance on the SVRS in this instance amounted to an error, omission, or wrongful act, and the district court therefore properly dismissed the petition on respondents' motion for summary judgment.
Because it is a petitioner's burden to show an error, omission, or wrongful act in bringing a section 204B.44 petition, a petitioner must produce admissible evidence to demonstrate the alleged error. The district court concluded that appellant failed to demonstrate an error, omission, or wrongful act by respondent "in rejecting these 147 signatures, particularly when confronted with affirmative evidence in the official voter record that the signatory did not inhabit the local government unit, or had never been registered to vote in the municipality of St. Paul."
We agree with the district court. Appellant has shown a difference between the information on the petition and the SVRS information. But there is no admissible evidence-such as sworn affidavits from voters whose claimed address differs from the SVRS records-suggesting that this difference amounts to an error, omission, or wrongful act by election officials. Because appellant provided the district court with no admissible evidence sufficient to create a genuine issue of material fact, the district court properly dismissed appellant's petition and granted respondents' motion for summary judgment.
Appellant also argues that the district court erred in dismissing the petition without *52 making a finding of fact or conclusion of law regarding the precise number of valid signatures offered in support of the petition. He argues that he should have been afforded the chance to submit additional signatures because he intended to supplement his original section 410.12 petition once the district court had determined the number of legally validated signatures.
Section 410.12 allows for petitions to be amended at any time within ten days after "the making of a certificate of insufficiency by the city clerk, by filing a supplementary petition." Minn. Stat. § 410.12, subd. 3.
The city clerk shall within five days after such amendment is filed, make examination of the amended petition, and if the certificate shall show the petition still to be insufficient, the city clerk shall file it in the city clerk's office and notify the committee of the petitioners of the findings and no further action shall be had on such insufficient petition.
Id. The final finding of insufficiency or irregularity "shall not prejudice the filing of a new petition for the same purpose." Id.
Appellant chose not to amend the petition and chose not to acquire new signatures under section 410.12. There is no authority to suggest that his filing of the section 204B.44 petition to correct errors or omissions tolled the time period to amend his petition or add signatures. Minn. Stat. § 204B.44. Likewise, the statutory scheme is one for the correction of errors by election officials, and is not intended to enmesh the district court in micromanaging the affairs of home rule charter cities. If appellant wishes to proceed, he can file a new petition for the same purpose. Minn. Stat. § 410.12, subd. 3.
DECISION
Appellant chose to forego amending his petition within the ten-day time period allowed by Minn. Stat. § 410.12. Instead, appellant chose to file a petition with the district court under Minn. Stat. § 204B.44 to correct an error, omission, or wrongful act. Appellant then bore the burden to produce admissible evidence that the elections office committed an error, omission, or wrongful act. Appellant failed to produce admissible evidence that respondents' reliance on the SVRS amounted to an error, omission, or wrongful act, and the district court properly dismissed the petition and granted respondents' motion for summary judgment. We see no error by the district court.
Affirmed.

Among other requirements, section 410.12, subdivision 2, requires each petitioner to provide "the place of residence by street and number, or other description sufficient to identify the place."

Appellant's affidavit claimed that the voter-registration list provided to the public by the secretary of state provides only the most current address of any individual registrant, whereas the SVRS contains previous voter-registration information, including previous addresses and dates of changes to the registration record.

Because the parties addressed the issue under the statute, and made no constitutional arguments, our analysis is focused on the statute's requirements.

The district court applied the former version of rule 56 which, at the time, was Minn. R. Civ. P. 56.03. The rule was recently "revamped" to more "closely follow" the federal rules and was renumbered to Minn. R. Civ. P. 56.01. Minn. R. Civ. P. 56 2018 advisory comm. cmt. When promulgating amendments to rule 56, effective on July 1, 2018 and applicable to pending cases, the supreme court specifically indicated that amended language on the standard for granting summary judgment reflects recent Minnesota caselaw. Order Promulgating Amendments to Rules of Civil Procedure , No. ADM04-8001 (Minn. Mar. 13, 2018). Because the legal standard is unchanged, we cite to the current version of the rule, even though the district court's decision was issued before the amended rule took effect.

Appellant does not challenge the appointment.

Appellant did not argue to the district court, and does not argue on appeal, that Minn. Stat. § 200.039(2) has any application here. As noted above, that statute provides that statutes such as Minn. Stat. § 410.12"must not be construed to restrict the eligibility to sign the petition to only those individuals who were eligible to cast ballots or who did cast ballots in the previous election." Minn. Stat. § 200.039(2).