NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROBERT MCGEE, *Plaintiff/Appellee,*

*v.*

MARK SYMS, *Defendant/Appellant.*

No. 1 CA-CV 18-0517
FILED 11-12-2019

Appeal from the Superior Court in Maricopa County
No. CV 2018-008775
The Honorable Christopher A. Coury, Judge
The Honorable Margaret R. Mahoney, Judge

**AFFIRMED**

COUNSEL

Goldman & Zwillinger, PLLC, Scottsdale
By Mark D. Goldman, Jeremy Phillips
*Counsel for Defendant/Appellant*

Ballard Spahr, LLP, Phoenix
By Joseph A. Kanefield, Mark S. Kokanovich, Ian O. Bucon
*Counsel for Plaintiff/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Michael J. Brown joined.

---

C A M P B E L L, Judge:

¶1   Mark Syms appeals from the superior court's amended final judgment as well as its orders denying his motions for change of judge and new trial. For the following reasons, we affirm.

**BACKGROUND**

¶2   To secure a place on the November 6, 2018 general election ballot as an independent candidate for State senate, Syms submitted nomination petitions, which ostensibly included more than 2,100 signatures collected from qualified electors in Legislative District 28 ("the district"), to the Secretary of State. *See* A.R.S. §§ 16-314, -322 (setting forth the requirements for placement on the ballot). Less than two weeks later, Robert McGee, a qualified elector from the district and the spouse of the district's incumbent candidate, filed a complaint challenging the legal sufficiency of Syms' nomination petitions pursuant to A.R.S. § 16-351. Apart from his claim that most of the petitions' signatures were invalid, McGee also requested an award of his reasonable attorney fees and costs pursuant to A.R.S. § 12-349. In his answer, Syms challenged the admissibility of the Maricopa County Recorder's ("County Recorder") report ("the report"), which supported McGee's claim, and asserted that only a qualified expert could offer testimony comparing handwriting exemplars.

¶3   At an expedited hearing, the County Recorder testified that the Maricopa County Recorder's Office ("the County Recorder's Office") has a "practice and custom," developed over many years, to prepare reports in response to lawsuits challenging the sufficiency of petition signatures. Notwithstanding this long-standing tradition, the County Recorder stated that he has no statutory obligation to perform such a task; rather, he does so only as "a courtesy" to the courts.

¶4   When asked about his training and the signature verification process, the County Recorder testified that he and his staff receive FBI-

caliber training in handwriting identification and compare electors' petition signatures with the signatures on file from the electors' original voter registration forms. In addition, to verify the validity of petition signatures, the County Recorder's Office also ascertains whether the individuals who signed the petition: (1) are registered to vote; (2) are registered in the correct party; (3) have signed more than once; and (4) live within the applicable legislative district. *See* A.R.S. § 16-321 (establishing the parameters for petition signatures).

¶5        The County Recorder testified that his office conducted a signature verification of Syms' nomination petitions and issued a report of its findings. When McGee moved to admit the report, Syms' counsel objected on relevance grounds. The superior court overruled the objection, concluding any alleged deficiencies in the report went to the report's weight rather than its admissibility. With the report admitted, the County Recorder testified that Syms' nomination petition contained 1,675 invalid signatures.

¶6        After the County Recorder testified, McGee called Anthony Garcia, a named circulator on Syms' nomination petition, to testify. Although Garcia acknowledged that he is employed as a professional circulator, he denied circulating any petition sheets on Syms' behalf.

¶7        In response, Syms testified that his campaign hired a company to collect signatures and he did not personally employ any circulators. When asked whether he noticed any irregularities in the petition sheets before he submitted them to the County Recorder's Office, Syms admitted he had noticed that the addresses appeared to be written in the same handwriting. He explained, however, that he asked about the handwriting and was told that the circulators wrote the addresses, not the electors. In response, McGee's counsel confronted Syms with a statement Syms had recently made to the media, asserting that he was a victim of fraud. Syms clarified that he had no knowledge of any fraud *at the time* he submitted his nomination petitions.

¶8        Following the evidentiary hearing, the superior court issued a signed order finding, in relevant part, that the County Recorder's determination that most of the petition signatures did not match voter records was corroborated by other evidence. Specifically, the court cited: (1) Garcia's testimony that he never collected signatures on Syms' behalf; (2) the parties' stipulation that at least one signature was forged; and (3) the purported daily collection of signatures by Syms' circulators, which was "remarkabl[y]" high. Discounting the signatures invalidated by the report,

the court found that Syms had failed to submit the requisite signatures to qualify for placement on the general election ballot.

¶9 Consistent with A.R.S. § 16-351, Syms immediately appealed the superior court's ruling to the supreme court. McGee, in turn, moved to "amend the judgment" to include Arizona Rule of Civil Procedure ("Rule") 54(b) language reflecting that his claims for attorney fees and costs were still pending in the superior court. After the appellate matter was fully briefed, the supreme court entered a signed order affirming the superior court, finding "abundant" evidence that Syms had not produced "enough valid signatures to qualify for the ballot."

¶10 After the supreme court issued its order, the superior court considered McGee's motion for attorney fees and costs and concluded that Syms defended McGee's claims without substantial justification and primarily for delay and harassment, and in so doing, unreasonably expanded and delayed the proceedings, justifying a fee award under A.R.S. § 12-349. Based on that determination, the court entered an "amended final judgment" that included an award of attorney fees and costs to McGee in the amount of $50,733.

¶11 Following the superior court's entry of the "amended final judgment," Syms moved for a change of judge for cause, arguing the superior court judge, the Honorable Christopher Coury, had failed to disclose "unwaivable" conflicts of interest and therefore his orders must be vacated. Raising the same claims, Syms also moved for a new trial.

¶12 Consistent with Rule 42.2(e), the Honorable Margaret Mahoney considered the merits of Syms' motion for change of judge. After reviewing the relevant portions of the record, Judge Mahoney concluded Syms' assertion that Judge Coury was biased or prejudiced was without merit and denied the motion for change of judge. Because Syms' motion for new trial was predicated on his challenge to Judge Coury for cause, the superior court likewise denied Syms' motion for new trial. Syms timely appealed.

## DISCUSSION

I. **The Superior Court Retained Jurisdiction to Enter the Attorney Fees and Costs Award.**

¶13 Syms contends his appeal to the supreme court from the signed order enjoining him from appearing on the ballot divested the superior court of jurisdiction. According to Syms, the superior court

therefore lacked authority to enter the subsequent "amended final judgment," which included an award for attorney fees and costs.

¶14　　　Whether the superior court "had jurisdiction to enter the order from which this appeal has been taken" is an issue of law that we review de novo. *Danielson v. Evans*, 201 Ariz. 401, 411, ¶ 36 (App. 2001). In general, a superior court is divested of jurisdiction upon the filing of a notice of appeal, but this rule "is not absolute" and there are many "well established exceptions." *In re Johnson*, 231 Ariz. 228, 230, ¶ 7 (App. 2012) (internal quotations omitted). While a final judgment is not appealable under A.R.S. § 12-2101(A)(1) unless ordered pursuant to Rule 54(b) (governing a "final judgment as to one or more, but fewer than all, claims or parties") or (c) (governing a final judgment disposing of "all claims" by all parties), other statutes "authorize appeals of various rulings that are not "'final judgments' under A.R.S. § 12-2101(A)(1)." *Brumett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 425, 427, ¶¶ 2, 9 (App. 2016).

¶15　　　In this case, the superior court's signed order enjoining Syms from appearing on the ballot did not constitute a "final judgment" for purposes of A.R.S. § 12-2101(A)(1). Instead, the court's order was immediately appealable pursuant to A.R.S. § 16-351(A), the statute governing challenges to nomination petitions. The plain language of the statute requires a superior court to "hear and render a decision" on a nomination petition challenge "[w]ithin ten days after the filing of the action," and any appeal from that decision must be submitted directly to the supreme court "within five days after" the superior court's decision. A.R.S. § 16-351(A).

¶16　　　Notably, Syms seemingly acknowledged that the superior court retained jurisdiction to enter a subsequent fee award following his appeal to the supreme court, as reflected in his response to McGee's motion "to amend the judgment." Specifically, Syms asserted that an amended ruling referencing Rule 54(b) was unnecessary because the superior court's signed order did not contain Rule 54(c) language denoting finality and therefore the parties' rights or liabilities could not be "inadvertent[ly] extinguish[ed]." In response to McGee's motion for an award of attorney fees, Syms urged the superior court to delay ruling on the motion until the supreme court issued its decision establishing the ultimate prevailing party in the case. By his own admission, Syms' appeal to the supreme court was not from a "final judgment," and the superior court had jurisdiction to enter the award of attorney fees and costs.

II.     **The Supreme Court's Order Did Not Foreclose an Award of Attorney Fees and Costs in the Superior Court.**

¶17     Syms contends the supreme court's order, which denied McGee's request for attorney fees, precluded the superior court from entering an attorney fees award. Syms asserts that the supreme court's denial of McGee's request for attorney fees applied to McGee both as the plaintiff in the superior court and as the appellee in the supreme court. We disagree.

¶18     In his answering brief to the supreme court, McGee requested an award of his "reasonable attorneys' fees and costs incurred on appeal pursuant to A.R.S. § 12-349." This request for attorney fees was accompanied by a footnote explaining that the superior court had not entered a final judgment pursuant to Rule 54(c) and therefore McGee's request for attorney fees in the superior court "remain[ed] pending before Judge Coury." In the event it found otherwise, however, McGee asked the supreme court to "remand the case" to the superior court for consideration of his attorney fees request.

¶19     In its order, the supreme court summarily denied McGee's attorney fees request, stating, "IT IS FURTHER ORDERED Plaintiff/Appellee's request for attorney's fees is denied." Contrary to Syms' contention, this language cannot reasonably be construed as denying McGee's request for attorney fees in the superior court. As unambiguously reflected in his answering brief, McGee requested only that the supreme court award him attorney fees and costs incurred on appeal, not his attorney fees and costs incurred in the superior court. Equally important, the naming convention the supreme court used in its order, "Plaintiff/Appellee," was consistent with McGee's official designation on appeal and the supreme court's caption, and therefore did not connote an intent to deny McGee's pending request for attorney fees incurred in the superior court.

III.    **The Superior Court Properly Imposed Sanctions Against Syms Under A.R.S. § 12-349 for McGee's Attorney Fees.**

¶20     Syms contends the superior court improperly awarded McGee attorney fees under A.R.S. § 12-349. Distilled, Syms raises three challenges, arguing: (1) the imposition of attorney fees in an action challenging a nomination petition is contrary to public policy and may discourage political involvement and limit ballot access; (2) his defense to McGee's nomination petition challenge was not groundless, did not

constitute harassment, and was made in good faith; and (3) the awarded attorney fees and costs are excessive.

¶21 Under A.R.S. § 12-349(A), the court "shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages . . . if the attorney or party": (1) brings or defends a claim without substantial justification; (2) brings or defends a claim solely or primarily for delay or harassment; (3) unreasonably expands or delays the proceeding; or (4) engages in abuse of discovery. As defined within the statute, the phrase "'without substantial justification' means that the claim or defense is groundless and is not made in good faith." A.R.S. § 12-349(F).

¶22 We review the superior court's application of A.R.S. § 12-349 de novo, but in so doing, we view "the evidence in a manner most favorable to sustaining the award" and affirm unless the superior court's findings are "clearly erroneous." *Phoenix Newspapers, Inc. v. Dep't of Corr.*, 188 Ariz. 237, 243–44, ¶ 7 (App. 1997). We may affirm the superior court's ruling "if it is correct for any reason apparent in the record." *Forszt v. Rodriguez*, 212 Ariz. 263, 265, ¶ 9 (App. 2006).

### A. The Superior Court Properly Applied A.R.S. § 12-349 to the Nomination Petition Challenge.

¶23 In the absence of a "dedicated" statute or rule providing for an award of attorney fees and costs to a party who successfully challenges a nomination petition, Syms argues that a prevailing challenger should bear his own litigation expenses. Relying primarily on public policy considerations, Syms asks us to preclude application of A.R.S. § 12-349 to nomination petition challenges, asserting the specter of punitive attorney fee awards may dissuade political participation.

¶24 By its own terms, A.R.S. § 12-349 applies to *any* civil action commenced or appealed in the State unless expressly "inconsistent with another statute." A.R.S. § 12-349(A). Although Syms correctly notes that no Title 16 statute provides for an award of attorney fees to a nomination petition challenger, it is equally true that no statute precludes an award. The only marginally relevant statute on this point, A.R.S. § 16-351.01, authorizes a court to award the county recorder any reasonable expenses incurred during the signature verification process if the court determines that the candidate knowingly or recklessly submitted a petition containing "a substantial number of invalid signatures." Given the breadth of A.R.S. § 12-349's stated scope, and the absence of any contradictory provision in Title 16, we find no basis to preclude application of the statute to

nomination petition challenges. *But cf. Kromko v. Superior Court*, 168 Ariz. 51, 61 (1991) (denying the prevailing, defending party's request for attorney fees, explaining he had failed to "cite express authority" for such an award and the court "desire[d] to avoid placing a chill on future petition challenges by private citizens").

### B. The Superior Court's Findings Are Supported by the Record.

¶25 Syms contends the superior court improperly found his defense was groundless and not in good faith. First, he argues the court set forth inconsistent and irreconcilable findings in its orders enjoining him from appearing on the ballot and awarding attorney fees. Second, he asserts that his defense to the nomination petition challenge—that Title 16 fails to provide "statutory guidance" regarding the role of the County Recorder— raised a "legitimate concern" that was "echoed by the Arizona Supreme Court."

¶26 The superior court's findings are neither inconsistent nor mutually exclusive. While the court's order enjoining him from appearing on the ballot included a finding that Syms did not directly or knowingly engage in the fraudulent collection of signatures, that finding addressed only Syms' lack of personal culpability for the commission of the fraud. In contrast, the court's subsequent findings that Syms consciously disregarded multiple overt  indications of fraud in the signature collection process and ultimately raised an unreasonable defense to the nomination petition challenge related to Syms' knowledge of the fraud *at the time* he submitted his nomination petition, mounted his defense, and participated in the court proceedings.

¶27 Similarly, Syms' contention that the supreme court legitimized his concerns regarding the statutory role of the County Recorder both mischaracterizes his defense and misconstrues the supreme court's order. Syms argued at length that neither the County Recorder's testimony nor his report was admissible to prove that the petitions' signatures were invalid. Contrary to Syms' argument, the supreme court expressed no concerns regarding the admissibility of the County Recorder's report or testimony. Instead, the supreme court highlighted "the significant role the county recorder's comparison of signatures often plays in petition challenges," expressed concern that the County Recorder considered this vital task a mere "courtesy" to the courts and urged the legislature to clearly define the County Recorder's statutory duties.

¶28     Well established caselaw recognizes that the County Reporter's findings and conclusions are routinely presented to the superior court as part of nomination petition challenges. *See, e.g.*, *Lubin v. Thomas*, 213 Ariz. 496, 497–99 ¶¶ 5, 12–18 (2006). Given Syms' notice of the County Recorder's report in this case, his admission that he had noticed irregularities with the petition signatures *before* he submitted them, and his representation to the media that he was the victim of fraud *before* the evidentiary hearing, we cannot say the superior court erred by finding his defense was groundless and not in good faith.[1]

### C.     The Superior Court's Award of Attorney Fees and Expenses Under A.R.S. § 12-349 Is Appropriate.

¶29     Syms contends the superior court improperly "shifted" McGee's "entire fee" to one of his attorneys rather than limiting the attorney fees award to "specific expenditures" incurred as a result of Syms' "alleged bad acts." He also asserts the court improperly awarded McGee $5,000 in non-taxable costs.

¶30     In its order awarding McGee attorney fees and costs, the superior court explained, in detail, its basis for imposing sanctions: (1) "Syms' defense was implausible and unreasonable"; (2) "Syms ignored and consciously disregarded the likelihood that he had submitted a significant number of invalid signatures"; (3) Syms' "lack of due diligence" was "particularly troubling"; (4) Syms filed his nomination petition "without regard for the risk of forged or fraudulent signatures" as demonstrated by numerous fraud indicators, such as the similarity of the handwriting, consecutive addresses, and the large number of signatures purportedly collected in one day; and (5) Syms "essentially played 'ostrich' and pressed on toward the hearing" when confronted with the fraud by both the complaint and the media. From these findings, it is apparent that the court found Syms knew or should have known that his nomination petitions were predicated on fraud *at the time* he submitted them to the County Recorder's Office. Because the record supports the court's findings, we cannot say that the court erred by holding Syms financially responsible for the attorney fees McGee incurred.

---

[1]     Because the record supports the superior court's finding that his defense was groundless and not in good faith, we need not reach Syms' alternative arguments that the court improperly found he defended the petition challenge primarily for delay or harassment or unnecessarily expanded or delayed the proceedings.

¶31        Likewise, the record supports the superior court's award of $5,000 for fees charged by the vendor who reviewed and prepared spreadsheets summarizing defects in the nomination petition. In general, non-taxable costs are not recoverable as part of an attorney fees award. *Ahwatukee Custom Estates Management Ass'n, Inc. v. Bach*, 193 Ariz. 401, 402–03, ¶¶ 7–8 (1999). However, A.R.S. § 12-349(A) expressly authorizes a court to assess expenses and damages, in addition to reasonable attorney fees. Accordingly, we affirm the attorney fees and costs award.

**IV.    The Superior Court Properly Denied Syms' Motions for Change of Judge and New Trial.**

¶32        Syms argues Judge Mahoney denied his motion for change of judge without properly considering and crediting three experts' opinions that Judge Coury should have recused himself. He also contends that Judge Coury erred by failing to sua sponte disclose his potential conflicts and recuse himself.

¶33        A judge is presumed to be "free of bias and prejudice." *Stagecoach Trails MHC, L.L.C. v. City of Benson*, 232 Ariz. 562, 568, ¶ 21 (App. 2013) (internal quotation omitted). To overcome this presumption, a party challenging a judge's impartiality must present a specific basis for an assertion of bias and prove bias by a preponderance of the evidence. *Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 63, ¶ 29 (App. 2010). This bias must arise from an extrajudicial source and not from the judge's participation in the case; a judge's rulings, alone, do not demonstrate bias. *Id.* We review the denial of a motion for change of judge based on a claim of judicial bias for an abuse of discretion. *Stagecoach Trails,* 232 Ariz. at 568, ¶ 21.

¶34        At the outset of the expedited hearing, Judge Coury disclosed to the parties that he had "a relation" to a member of the Maricopa County Board of Supervisors who was in his official capacity named in the complaint. Avowing that he nonetheless could be "fair and impartial," Judge Coury asked whether "anyone request[ed] recusal," and each responding attorney affirmatively declined such invitation.

¶35        Two weeks after Judge Coury entered the "amended final judgment," supplementing the order enjoining Syms from appearing on the ballot with an award of attorney fees and costs, Syms moved for a change of judge for cause pursuant to A.R.S. § 12-409 and Rule 42.2. According to Syms, Judge Coury had multiple conflicts that should have precluded him from presiding over the nomination petition challenge: (1) his first cousin, Steve Chucri, a member of the Maricopa County Board of Supervisors,

endorsed McGee's spouse for reelection; (2) his sister-in-law actively and openly supported McGee's spouse for reelection; (3) he was appointed by Jan Brewer when McGee's attorney, Joseph Kanefield, worked for the Governor; and (4) he worked at the same law firm as McGee's brother-in-law before his appointment to the bench. In an affidavit accompanying the motion, Syms' attorney avowed that Judge Coury mocked and demeaned counsel throughout the expedited hearing, demonstrating "actual bias and prejudice." In support of the motion for change of judge, Syms also submitted affidavits from three former judges, each of whom concluded that Judge Coury should have fully disclosed the alleged conflicts of interest and recused himself.

¶36 After reviewing the relevant portions of the record, including the submitted expert opinions, as well as a video recording of the expedited hearing, Judge Mahoney denied Syms' motion for change of judge, finding: (1) Judge Coury properly disclosed that he was related to Steve Chucri, yet no attorney requested recusal; (2) there is no rational basis for categorically prohibiting a judge to preside "over a case in which one of the attorneys is former counsel for the governor who appointed the judge"; (3) Syms' claim that Judge Coury may be biased in favor of McGee's wife's brother-in-law was based "on nothing more than speculation" and there was no evidence that Judge Coury and his former coworker had "any relationship"; (4) Syms' claims that Judge Coury may have bias toward McGee based on his extended family's political views was predicated on "sheer speculation" that assumed Judge Coury knew his extended family's political views and either adopted them as his own or otherwise allowed them to influence his judicial decision-making; and (5) Judge Coury exhibited professionalism throughout the expedited hearing and his demeanor demonstrated neither bias nor favoritism "toward any participant." Based on her review of the video recording of the hearing, Judge Mahoney found that Syms' claims that Judge Coury mocked counsel and made light of the matter "could not be further from the truth."

¶37 Although Syms acknowledges that Judge Mahoney expressly reviewed and considered the experts' opinions, he contends she failed to assign appropriate weight to the opinion evidence. In other words, absent any "contrasting or contradictory evidence," Syms contends that Judge Mahoney was compelled to adopt the experts' opinions as her own.

¶38 While it is true that McGee did not submit controverting expert opinions for consideration, Syms' argument fails to account for Judge Mahoney's independent review of the record, including the video recording of the hearing. Based on her review of that recording, Judge

Mahoney found Syms' allegations that Judge Coury behaved in a condescending, unprofessional, and biased manner wholly without merit. In her role as the fact-finder, Judge Mahoney was tasked with determining the weight to give evidence, and we cannot say that she abused her discretion by according greater weight to her own observations of the expedited hearing than to the experts' opinions. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).

**¶39** Turning to Syms' contention that Judge Coury should have sua sponte recused himself, the record reflects that Judge Coury immediately notified the parties that he was related to a member of the Maricopa County Board of Supervisors, yet no one inquired about the nature of the relationship or requested recusal. Although Syms alleges Judge Coury had various other personal and professional relationships that may have presented a conflict, his claims are based on speculation and the record does not reflect that the judge had a personal bias requiring disqualification. Therefore, given the lack of any evidence demonstrating bias, the superior court did not improperly deny Syms' motion for change of judge or his motion for new trial predicated on the same claim.

## CONCLUSION

**¶40** For the foregoing reasons, we affirm. McGee requests an award of his reasonable attorney fees and costs incurred on appeal pursuant to A.R.S. § 12-349 and ARCAP 21. Because we do not find that Syms brought this appeal without substantial justification, solely or primarily for delay or harassment, or to unreasonably delay the proceedings, we deny McGee's request for an award of attorney fees. As the prevailing party on appeal, however, we award McGee his costs incurred on appeal, subject to compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA